# EXHIBIT "A"

**MEMORANDUM OF SALE**
**(Successful Purchaser)**

The undersigned (the "**Purchaser**") has today agreed to purchase certain property commonly known as **465 and 584 Warrensburg Road (Ranch & Golf Course), Stony Creek, New York** (the "**Property**") for the sum of One Million Four Hundred and Five Thousand Dollars ($1,405,000.00) being sold by John J. Arehart, the debtor and debtor-in-possession ("**Jack Arehart**" or "**Mr. Arehart**") in a Chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of New York (the "**Bankruptcy Court**"), Case No. 15-11894, and Marc S. Ehrlic, the duly-appointed Chapter 7 Trustee (the "**Trustee**") in the Chapter 7 bankruptcy case of Sit'n Bull Ranch and Country Club, Inc. pending in the Bankruptcy Court, Case No. 15-10080 (Mr. Arehart and the Trustee are collectively referred to as the "**Sellers**").

Purchaser hereby promises and agrees to comply with the annexed Terms and Conditions of Sale and that certain Final Order: (I) Authorizing the Retention of Tranzon Auction Properties as Auctioneer/Real Estate Broker; (II) Authorizing the Auction Sale of Real and Personal Property, Subject to Higher and Better Offers, and Free and Clear of All Liens, Claims and Encumbrances, (III) Approving Terms and Conditions of Sale (Including Bidding Procedures), (IV) Scheduling the Sale Hearing, (V) Authorizing Joint Caption, and (VI) Granting Related Relief entered by the Bankruptcy Court in the above-references cases on October 28, 2015 (Docket No. 47), which are incorporated herein by reference.

Purchaser hereby acknowledges that the Property is being sold AS IS, WHERE IS, WITHOUT RECOURSE TO, REPRESENTATION BY, OR WARRANTIES BY, THE SELLERS OF ANY KIND OR DESCRIPTION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AND WITHOUT CONTINGENCIES OF ANY KIND, EXCEPT THAT THE PURCHASER'S OBLIGATION TO CLOSE SHALL BE CONTINGENT ON PURCHASER'S RECEIPT OF MARKETABLE TITLE .

Purchaser hereby acknowledges that the sale of the Property is subject to approval by the Bankruptcy Court in accordance with the procedures set forth in the annexed Terms and Conditions of Sale.

[Signature Page Follows]

NOLAN & HELLER, LLP

Justin A. Heller, Esq.
*Attorneys for Debtor John J. Arehart*
39 North Pearl Street
Albany, New York 12207
(518) 449-3300

MARC S. EHRLICH, ESQ.
Chapter 7 Trustee of
Sit'n Bull Ranch and Country Club, Inc.
64 Second Street
Troy, New York 12180
Phone: (518) 272-2110

Purchaser's Name: CAROL P. McLEAN

Purchaser's Address: 149 NICHOLS ST. WELLSBORO PA 16901

Purchaser's Signature:

## TERMS AND CONDITIONS OF SALE

1. The auction to be conducted on November 18, 2015 at 2:00 p.m. at 465 Warrensburg Road, Stony Creek, New York, the street address of the 1000 Acres Ranch Resort (the "**Auction Sale**") by Tranzon Auction Properties ("**Tranzon**") on behalf of John J. Arehart ("**Mr. Arehart**"), Polly Arehart, 1000 Acres Ranch Resort, Inc. and Marc. S. Erhlic as Chapter 7 Trustee of Sit'n Bull Ranch and Country Club, Inc. (the "**Trustee**") (collectively, the "**Sellers**") is governed by these "Terms and Conditions" and the Order approving same entered by the United States Bankruptcy Court for the Northern District of New York (the "**Court**").[1] By participating in this Auction Sale, all bidders consent to be bound by these Terms and Conditions as well as by any additional terms that may be announced at the Auction.

2. Prior to the Auction Sale, each prospective bidder must deliver to Tranzon a certified check or bank check in the amount of Fifty Thousand Dollars ($50,000.00) ("**Qualifying Deposit**") payable to Sellers' counsel, "Nolan & Heller, LLP" ("**N&H**") in order to be permitted to bid on the Property, which amount shall serve as a partial good faith deposit against payment of the purchase price by such competing bidder as the Seller Representatives determine to have made the highest and best bid for the Property (the "**Successful Bidder**"). The requirement for a Qualifying Deposit shall not be applicable to Lienholders intending to credit bid at the Auction Sale.

3. The Property is being sold AS IS, WHERE IS, WITHOUT RECOURSE TO, REPRESENTATION BY, OR WARRANTIES BY, THE SELLERS OF ANY KIND OR DESCRIPTION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AND WITHOUT CONTINGENCIES OF ANY KIND, EXCEPT THAT THE PURCHASER'S OBLIGATION TO CLOSE SHALL BE CONTINGENT ON PURCHASER'S RECEIPT OF MARKETABLE TITLE .

4. The Sellers and Tranzon are not responsible for the correct description, genuineness, authenticity, count of, or defect in any goods, and make no warranty or representation in connection therewith. No sale shall be set aside nor allowance made on account of any incorrectness, error in cataloging, or any imperfection not noted. Bidders acknowledge that they have had the opportunity to inspect all Property prior to tendering their bid and waive any and all claims with respect thereto.

5. The Sellers shall take all steps reasonably necessary to assign any assignable permits, licenses and rights incidental to the Property, solely at the expense of the purchaser, and provided that (a) the Sellers make no representation or warranty concerning the assignability of any permits, licenses or other rights, and (b) the

---

[1] Mr. Arehart and the Trustee shall represent the interests of all of the Sellers, and are referred to together herein as the "**Seller Representatives**."

Sellers' inability for any reason to complete any such assignment shall not terminate the purchaser's obligation to close in accordance with these Terms and Conditions.

6. The Sellers will provide reasonable access to the Property for prospective bidders to perform due diligence. In order for prospective bidders to conduct inspections of the Property, they must provide Tranzon with proof that they have sufficient funds for the required Qualifying Deposit.

7. Tranzon shall have discretion to set bidding increments, and to arrange for remote bidding in the form of telephone or internet bidding, provided such bidders have delivered a Qualifying Deposit.

8. Tranzon may offer all of the Property in bulk or may offer the Ranch Real and Personal Property separately from the Golf Club Real and Personal Property, or may offer the Property both in bulk and in lots to determine the highest and best offer or offers. In the event a sale of a portion of the Property results in sufficient proceeds to pay all creditors in Mr. Arehart's case, Mr. Arehart may, at his discretion, remove the Golf Club Real and Personal Property from the Auction Sale.

9. Pursuant to Bankruptcy Code § 363(k), any Lienholder may credit bid at the Auction Sale up to the allowed amount of their secured claim. All Terms and Conditions will apply in the event a Lienholder is the Successful Bidder, except as expressly stated in these Terms and Condition. A Lienholder that is the Successful Bidder will be required to pay at Closing any amounts required to satisfy any Liens having priority over such Successful Bidder's Lien, and any amounts bid in excess of its allowed secured claim.

10. At the conclusion of the Auction Sale, after the Seller Representatives have determined which bidder is the Successful Bidder, Tranzon and N&H will return the Qualifying Deposit to all other bidders.

11. Within 48 hours after conclusion of the Auction Sale, the Successful Bidder shall deliver to N&H by wire transfer, certified check or bank check payable to N&H, an amount equal to ten percent (10%) of its successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "**Deposit**"). If a Lienholder credit bids and is the Successful Bidder, then the requirement of this condition shall not apply, unless the Lienholder bids in excess of its secured claim.

12. Within 3 business days following the Auction Sale, the Seller Representatives shall file with the Bankruptcy Court an application seeking an Order approving the sale of the Property to the Successful Bidder. The sale of the Property is subject to approval by the Bankruptcy Court, at a further hearing to be scheduled by the Court (the "**Sale Hearing**").

13. The Successful Bidder must close title to the Property at a date that is no more than either 45 days from conclusion of Auction Sale or 10 days of approval by the

Court at the Sale Hearing, whichever is longer (the "**Closing**") at the offices of Nolan & Heller, LLP, 39 North Pearl Street, Albany, New York, or at such other places where the parties may agree, TIME BEING OF THE ESSENCE AS TO THE PURCHASER(S), although such date may be extended for up to 30 days solely by the Seller Representatives.

14. In the event that the Successful Bidder for the Property fails to (a) tender within 48 hours after conclusion of the Auction Sale, by certified check or bank check, an amount equal to ten percent (10%) of its successful bid, (b) tender the payment of the balance of the Purchase Price on the Closing date, or (c) otherwise perform any of their obligations under these Terms and Conditions, at the sole option of the Seller Representatives, the Successful Bidder's Deposit shall be deemed forfeited, and Sellers shall be authorized to arrange for the sale of the Property to the Second Highest Bidder without any further notice and without giving credit for the Deposit forfeited by the Successful Bidder. Except as otherwise expressly agreed to by the Seller Representatives, these Terms and Conditions shall govern in the event of a sale to the Second Highest Bidder. If a Lienholder credit bids and is the Successful Bidder, then the Lienholder shall not be required to tender payment on account of the credit bid, but will be required to tender payment if and to the extent required to pay priority Liens or bids in excess of such Lienholder's credit bid.

15. The Successful Bidder shall pay any and all transfer taxes incurred in connection with transfer of the Property at the Closing. A Lienholder may include in their credit bid the projected transfer taxes that will be incurred in connection with the transfer of the Property at Closing.

16. The Successful Bidder shall pay all outstanding and unpaid county and town real property taxes, school district property taxes, and other municipal taxes and assessments due upon the Auctioned Property, along with all interest and penalties thereon, either prior to or at the time of Closing; it being intended that such amounts shall not be paid from the proceeds of the Auction Sale. If a Lienholder credit bids and is the Successful Bidder, then the requirement of this condition shall not apply, and the Lienholder may take title to the Property subject to such unpaid taxes and assessments.

17. By participating in an Auction Sale, each bidder represents, warrants and covenants that (i) it shall not misrepresent its ability to close the transaction pursuant to these Terms and Conditions, (ii) it has the capacity to close the transaction, (iii) it has actual authority to enter a bid, and to enter into an agreement to purchase the Property, and (iv) any bid it makes on Property or portion thereof constitutes an irrevocable offer to buy the item for the full amount of the bid.

18. These Terms and Conditions, and all questions with respect to the interpretation of these Terms and Conditions, shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to conflict of laws

provisions. All bidders expressly consent to personal and exclusive jurisdiction over all matters arising under or in connection with these Terms and Condition in the United States Bankruptcy Court for the Northern District of New York.

112312

GOLF COURSE



**Parcel Three** (commonly known as Tax Map Identification Numbers 235.-3-1; 234.-2-5.12; and 234.-2-4)

ALL that piece or parcel of land situate in the Town of Stony Creek, County of Warren and State of New York, which was acquired by the County of Warren from Leon Signor and Inez M. Signor for the construction of the Stony Creek Center-Thurman Town Line, County Road No.3, being Parcel A shown on Map No. 1, Serial 290, issued May 3, 1944, for county road and filed in the office of the Warren County Clerk, being described as follows:

PARCEL A - BEGINNING AT A POINT on the southerly boundary of the above existing County Road No.3, said point being 53 feet distant southerly measured at right angles from station 157 +

32 of the survey baseline of said Stony Creek Center-Thurman Town Line, County Road No.3; thence S 68 degrees 57' W 227.3 feet to a point 20 feet distant southerly measured at right angles from station 159 + 50 of said baseline; thence S 61 degrees 3' W. 404.5 feet to a point 114.5 feet distant southerly measured at right angles from station 163 + 71.5 of said baseline; thence S 57 degrees W. 475.9 feet to a point 64.5 feet: distant southerly measured at right angles from station 168 + 80.5 of said baseline; thence S 79 degrees 7' E. 108.5 feet to a point 153 feet distant southerly measured at right angles from station 168 + 18 of said baseline; thence north 57 degrees East along the southerly boundary of said existing County Road No.3, 1024 feet to the point of beginning: being 1.44 acres more or less.

The County of Warren reserves to itself the right to maintain the existing Stony Creek Center-Thurman Town Line County Road No.3, across the premises hereby conveyed including shoulders, slopes, drainage ditches and culverts.

This conveyance is made pursuant to Resolution No. 40, adopted by the Board of Supervisors on July 10, 1944, Resolution No. 229 adopted by the Board of Supervisors on December 13, 1968, and Resolution No. 76 adopted by the Board of Supervisors on February 16, 1979.

SUBJECT to all Easements, restrictions and covenants of record, if any.

BEING the same premises conveyed from COUNTY OF WARREN to DELEA FITZGERALD by Deed dated March 2, 1979 and recorded in the Warren County Clerk's Office on July 17, 1979 in Liber 624 of Deeds at Page 545.

AND ALSO ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Stony Creek, County of Warren and State of New York, bounded and described as follows to wit:

PARCEL NO. 2. All of Lot No: 1 of the Upper River Division of the Dartmouth Patent small tract and known as Kenyon Lot.
PARCEL NO. 3. Being two Islands lying in the Hudson River opposite the lands in Lot No. 2 above described, and being the same islands known as the Widow Cameron Islands containing 7 acres be the same more or less. Excepting from the lands above described all thereof set apart and occupied by the Sacketts Harbor and Saratoga Railroad Company, and the Adirondack Railroad Company, and the highway as it formerly ran through said premises. The above described premises are the same and it is intended to convey hereby all the lands mentioned and described in a deed thereof from Frederick Cameron and wife, Margaret Wood, and Hattie E. Gill to said James Stearns by deed bearing date November 17, 1890, recorded in the Clerk's office of Warren County January 12, 1891, in Book 62 of Deeds at Page 85. With the exception of piece above noted as conveyed to said Gillingham. With the exception of one island conveyed to John Arehart by deed dated November 15, 1968 and recorded in the Warren County Clerk's Office on November 15, 1968 in Book 501 at page 560.

ALSO ALL that triangular piece or parcel of land situate in the Town of Stony Creek, County of Warren and State of New York which was acquired by the County of Warren from Leon Signor and Inez M. Signor for the construction of the Stony Creek Center - Thurman Town Line

County Road No. 3, being Parcel B shown on a Map No. 1, Serial No. 290, issued May 3, 1944, for said county road and filed in the office of the Warren County Clerk, being described as follows:

PARCEL B - BEGINNING at a point on the northerly boundary of the above existing County Road No. 3; said point being 29 feet distant northerly measured at right angles from station R158 + 78 of the survey base line of said Stony Creek Center - Thurman Town Line County Road No.3; thence S 57 degrees W along the northerly boundary of said County Road No.3, 818.4 feet to a point 62 feet distant northerly measured at right angles from station 167 + 60 of said baseline; thence S 79 degrees 7' E 97 feet to a point 16.5 feet distant southerly measured at right angles from station 167 + 5.5 of said baseline; thence N 57 degrees E 592.5 feet to a point 21 feet southerly measured at right angles from station R160 + 39.5 of said baseline; thence N 33 degrees 12' E 170.5 feet to the point of beginning, being 1.09 acres more or less.

ALSO all that parcel of land as described as follows:

{See next page-Remainder of page intentionally left blank}

(GOLF COURSE LANDS)

PARCEL I

"ALL THAT PIECE OR PARCEL OF LAND, together with the buildings and improvements thereon, in the Town of Stony Creek, County of Warren and State of New York, bounded and described as follows: That part of the Upper River Division of Dartmouth Patent, Small Tract, and in lot known and designated as Lot No. 2, said Upper River Division bounded and described as follows:

BEGINNING on the west bank of the Hudson River at the northeast corner of said lot 2; running thence westerly on the northerly line of said lot about 74 chains to a corner; thence South 28 degrees West 18 chains to a corner; thence easterly on a line parallel to said first mentioned line to said river and thence up said river, as it winds and turns to the place of beginning. Containing 148 acres of land be the same more or less.

PARCEL II

ALSO, one of the islands known as the Widow Cameron Islands in the Hudson River and being that island which lies most southerly in the Hudson River.

EXCEPTING from the above lot 2 of the Upper River Division, that part that lies within the bounds of County Highway and the lands owned by the Delaware and Hudson Railroad."

Subject to covenants, restrictions and easements of record.

Parcels I and II being the same premises conveyed by John J. Archer to 1,000 Acres Ranch Resort Golf Club, Inc. by deed dated August 31, 1971 and recorded in the Warren County Clerk's Office September 3, 1971 in Book 540 of Deeds at Page 14.

PARCEL III

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situated, lying and being in the Town of Stony Creek, County of Warren and State of New York and being Lot No. 3 in the Upper River Division or Water Division of Dartmouth Patent, and being that part of the following described parcel which lies on the easterly side of the County Road which runs across the following described parcel; the parcel referred to herein is bounded and described as follows:

BEGINNING at a hemlock tree formerly on the bank of an inlet of the Hudson River, about two chains from the bank of the said river, the said tree being marked with a blaze on three sides, on the north side "No. 3" and on the south side "No. 4"; running thence along the line of marked trees, west fifty chains, to an ironwood stake and stones on a line of marked trees that runs in a direction of south 28 degrees West and North 28 degrees East; thence along said last line, northerly 22 chains and 30 links, to an ironwood stake and stones; thence east along a line of marked trees, until it comes to a bundle of basswood trees standing on the bank of said river; thence along down the river to a point where a due west course strikes the first mentioned hemlock tree.

EXCEPTING AND RESERVING, however, from the above described premises the land now occupied by the Adirondack Railroad Company, heretofore conveyed to that company by David M. Cameron, to which deed reference is hereby made for a more complete description.

EXCEPTING a right of way across the above described parcel as heretofore granted to Arthur F. Conkling, Julia Conkling, Joseph H. Montayne and Edith C. Montayne.

ALSO excepting and reserving a right of way to cross the above described property to the Hudson River for the benefit of Eldon N. Dingman, Agnes M. Dingman, Roland Zwart and Sheila Zwart, provided that this right of way shall be for the benefit of the parties named during their lifetime and shall not be assigned by said parties.

ALSO excepting therefrom a parcel of land and right of way conveyed to Edward Dexter and Kenneth Spinner, by deed recorded in the Warren County Clerk's Office in Book 446 of Deeds at Page 311.

Being the same premises conveyed to Heather C. Graves by Paul R. Gilchrist and Helen Gilchrist by deed dated October, 1963.

The above described parcel is also described as follows:

All that certain piece or parcel of land situate in the Town of Stony Creek, County of Warren and State of New York and being part of Lot No. 3 in the Upper River Division of Water Division of Dartmouth Patent and being that part of Lot 3 which lies on the easterly side of the County Road which runs across the said Lot 3, the parcel referred to herein is bounded and described as follows:

Beginning at the northeasterly corner of said Lot 3 on the westerly side of the Hudson River and which point is also the southeasterly corner of Lot 2; running thence North 83 degrees 51 minutes East [West] 15 feet, more or less, to an iron pipe set in the ground; thence continuing on the same course 1063.58 feet to an iron pipe set in the easterly bounds of the lands of the Delaware and Hudson Railroad; thence continuing on the same course to the easterly side of the County Road which runs across said Lot 3; running thence southerly along the easterly side of the said County Road to the southerly line of Lot 3 [; running thence easterly along the southernly line of Lot 3] to the Hudson River; running thence northerly and northeasterly along the westerly bank of the Hudson River, 2680 feet, more or less, to the point of beginning.

Excepting from the above described premises the parcels and rights of way described above."

Subject to covenants, restrictions and easements of record.

Parcel III being the same premises conveyed by John J. Archer to 1000 Acres Ranch Resort Golf Club, Inc. by deed dated August 31, 1971 and recorded on September 3, 1971 in Book 540 at Page 16.

PARCEL IV

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Stony Creek, Warren County, New York and being part of the lands shown on a map entitled, "Portion of Lot 3 Dartmouth Patent Upper River Division, Survey and map by J.E. LaFlure, dated April 4, 1964," and which map is intended to be filed in the Warren County Clerk's Office and more particularly bounded and described as follows:

BEGINNING at an iron pipe set near the shore of the Hudson River at the northeast corner of the lands shown on said map and which iron pipe is near a blazed basswood tree; running thence North 83 degrees 51 minutes West 147.78 feet to an iron pipe and then continuing on the same course 22.17 feet to an iron pipe; running thence southwesterly and parallel with the shore of the Hudson River 60 feet; running thence southeasterly at right angles to the last course 115 feet more or less to the shore of the Hudson River; running thence northeasterly along the Hudson River approximately 160 feet to the point of beginning.

TOGETHER with any lands which lie between the course along the Hudson River and the Hudson River.

SUBJECT to a right of way reserved to Paul and Helen Gilchrist, their heirs and assigns over a strip of land 15 feet in width along the line of the first course in the above described parcel to the iron pipe which is 169.95 feet from the point of beginning, and along the second course which is parallel with the River. Said right of way shall extend along the northerly line of the above described parcel to the Hudson River.

TOGETHER with a right of way 15 feet in width to travel from the above described parcel to the public highway which adjoins the land shown on the aforesaid map. The location of this right of way shall be as designated by Paul and Helen Gilchrist.

Being a part of the same premises conveyed to Paul R. Gilchrist and Helen Gilchrist by deed recorded in the Warren County Clerk's Office in Book 440 of Deeds at Page 37."

Subject to covenants, restrictions and easements of record.

Being the same premises conveyed from John J. Archart to 1000 Acres Ranch Resort Golf Club, Inc. by deed dated August 31, 1971 and recorded in the Warren County Clerk's Office on September 3, 1971 in Book 540 of Deeds at Page 20.

EXCEPTING AND RESERVING from the above parcels the following:

1. Those premises heretofore conveyed by 1000 Acres Ranch Resort Golf Club, Inc. to George F. Lawton by two deeds dated October 18, 1986 and recorded in the Warren County Clerk's Office on October 29, 1986 in Book 686 of Deeds at Pages 513 and 516.

2. Lots 1 and 4 as shown on a map entitled "1000 Acres Vista" made by P. Raymond Keyes, dated July 11, 1983 and filed in the Office of the Clerk of Warren County on November 2, 1984 in Plat Cabinet A-3."

RANCH



**Parcel One** (commonly known as Tax Map Identification Number 247.-1-19.4)

ALL that certain piece or parcel of land situate, lying and being in the Town of Stony Creek, County of Warren and State of New York known as Lot 4 as shown on a map entitled "Map of a Subdivision of Lands for George Ireland," dated 3 September 1992 and prepared by D. L. Dickinson Associates, said map was filed in the Warren County Clerk's Office April 13, 1993, in Plat Cab. Al, Slide 91 and bounded and described as follows:

**BEGINNING** at a point on the southerly bounds of lands of the Delaware and Hudson Railroad at the common corner of lots 3 and 4 as shown on said map;

thence running along a curve to the left having a radius of 2150 feet more or less, along the southerly bounds of said Railroad, an arc length of 426.44 feet to a point on the southerly bounds of lands now or formerly of Thousand Acres Ranch and Resort;

thence running South 76 degrees 38 minutes 05 seconds East, along the southerly bounds of said Thousand Acres, 485 feet, more or less, to the northerly shore of the Hudson River;

thence running southwesterly along the shore of said River, 762 feet more or less to the point on the division line between lots 3 and 4 as shown on said map,

thence running North 38 degrees 30 minutes 00 seconds West, along division line between lots 3 and 4 shown on said map, 560 feet more or less to the point and place of beginning.

Said parcel of land to contain 7.0 acres of land to be the same more or less.

Together with a 50.0 foot wide right of way over the northerly bounds of lots 2 and 3, as shown on said map. Said right of way is 50 feet in width and is bounded on the South by a line parallel to the northerly bounds of lots 2 and 3 as shown on said map. Said right of way is for the purpose of vehicular and pedestrian ingress and egress.

**EXCEPTING AND RESERVING** to Niagara Mohawk Power Corporation, its successors and assigns, from the parcel described in this deed, the permanent right of way and easement to operate, maintain, replace and/or remove any and all existing gas and electric facilities, if any, as are now erected upon the premises above described, including the full right, privileges and authority to cut and remove all trees, structures, and other obstructions within ten (10) feet of the center line of all electric and gas lines deemed necessary by Niagara Mohawk Power Corporation.

**ALSO, EXCEPTING AND RESERVING** to Niagara Mohawk Power Corporation, its Successors and assigns the permanent right of way and easement to operate, maintain, build,

construct, replace and/or remove electric and gas distribution facilities within twenty (20) feet of the edge of any highway (a) abutting the premises herein deemed necessary by said Niagara Mohawk Power Corporation, its successors and assigns, said easement to include the full right, privilege, and authority to cut and remove all trees, structures, and obstructions within said easement deemed necessary by Niagara Mohawk Power Corporation.

Parcel Two (commonly known as Tax Map Identification Number 247.-1-17)

ALL that tract or parcel of land, situate in the Town of Stony Creek, Warren County, N.Y. and described as follows: Being all of Lot No. Seven (7) and a part of Lot No. Eight (8), in the Upper River Division of Dartmouth Patent, Commencing at a hemlock stump on the bank of the Hudson River on the north line of Lot Seven; running from thence westerly on said line to the corner of said Lot; thence southerly on the west line of said Lot 7, to the corner between Lots 7 and 8; thence easterly on the line of Lot 7 until it strikes a small brook or rivulet, which brook is known as School House brook, in Dist. No. 1; thence down said brook as it winds and turns to the Hudson River, and thence up said river as it winds and turns to the place of beginning. Containing 125 acres of land, be the same more or less. EXCEPTING AND RESERVING therefrom about one-half acre of land sold and deeded to said School Dist. No. 1, and further EXCEPTING AND RESERVING the lands, tracks, roadbed and right-of-way as heretofore granted or conveyed to the Adirondack Railway Company or the predecessors of the D. & H. Co., supposed to be the present owners. EXCEPTING AND RESERVING therefrom, however, all of the portion of the above described premises heretofore conveyed by Jason M. Perkins to the New York Power and Light Corporation by deed dated November 24, 1930 and recorded in the Warren County Clerk's Office on December 9, 1930, in Book 185 of Deeds at page 269, reference being made to said conveyance for the description of the premises thereby conveyed.

Being a portion of the same premises conveyed by Jonathan Perkins to Jason M. Perkins by deed dated August 12, 1930, recorded in the Warren County Clerk's Office on August 22, 1930, in Book 184 of Deeds at page 195.

EXEPTING AND RESERVING the premises conveyed by Hildred Kenyon to Jacques Noel Jacobsen Jr. by deed dated July 1st, 1961, recorded in the Warren County Clerk's Office July 3rd, 1961, in Liber 410 of Deeds at page 370, reference being made to said conveyance for the description of the premises thereby conveyed.

(1000 Acres Ranch Lands)

PARCEL I

"ALL THAT CERTAIN PIECE OR PARCEL OF LAND situate, lying and being in the Town of Stony Creek, County of Warren and State of New York and being more particularly bounded and described as follows:

BEGINNING at a point on the westerly edge of the Hudson River on the northerly bounds of Lot 5 of the Upper River Division Dartmouth Patent, thence running from said point of beginning southerly along the westerly edge of the Hudson River as it winds and turns 2550 feet more or less; thence South 83 degrees 11 minutes West 1646 feet more or less; thence North 07 degrees 03 minutes West 2946.9 feet to a point on the northerly bounds of Lot 5 of the Upper River Division Dartmouth Patent; thence running along said northerly bounds of Lot 5, Upper River Division Dartmouth Patent, North 83 degrees 44 minutes East 1904 feet more or less to the point or place of beginning. Said parcel containing 100 acres of land to be the same more or less.

EXCEPTING AND RESERVING that portion that lies within the bounds of the Delaware and Hudson Railroad Company right of way.

EXCEPTING AND RESERVING that portion that lies within the bounds of the Warrensburg Road (County Route 3).

It is being the intention herein to describe a portion of the premises shown on a map entitled "N.Y.P.& L. Corp. Central Recreation Camp to A.R.M. Corp. Hadley Development" G-518. Parcels 99, 99A and 99B, as described in a deed from Central Recreation Camp, Inc. to Adirondack Realty Holding, party of the first part's predecessor corporation, and recorded in the Warren County Clerk's Office November 2, 1928 in Book 178 of Deeds at Page 59.

SUBJECT to easements and restrictions of record.

The lands are subject to Adirondack Park Agency Permit No. 91-199 issued January 17, 1992, the terms and conditions of which are binding upon heirs, successors and assigns of the grantors and all subsequent grantees. The Permit was recorded in the Warren County Clerk's Office on March 6, 1992 in Book 10 of APA Permits at Page 269."

Subject to covenants, restrictions and easements of record.

Being part of the same premises conveyed from Niagara Mohawk Power Corporation to John J. Arehart and Polly A. Arehart, his wife, by deed dated June 1, 1992 and recorded in the Warren County Clerk's Office June 1, 1992 in Book 854 of Deeds at Page 16.

PARCEL II

ALL THAT CERTAIN PIECE OR PARCEL OF LAND, situate, lying and being in the Town of Stony Creek, County of Warren and State of New York and being more particularly bounded and described as follows:

BOUNDED easterly by the Hudson River, northerly by Lot No. 3 of said Upper River Division of Dartmouth Patent (now or formerly owned by Williman Dingman); southerly by Lot No. 5 of said Upper River Division of Dartmouth Patent now or formerly owned in part by Adirondack Realty Holding Corporation and the remaining portion (now or formerly owned by Central Recreation Camp, Inc.); and westerly by a by a straight line drawn from the southerly line of said Lot No. 4 to the northerly line of said lot and which line at its southerly terminus is 300 feet (on a course south 83 degrees 44 minutes west) from the center line of lands occupied by the Delaware & Hudson Railroad Company for its railroad line to North Creek, and which at its northerly terminus is distant (on a course north 86 degrees east) 350 feet from the center line of said railroad lands; together with all of the right, title and interest of the party of the first part in and to the Hudson River and the lands thereunder lying between the northerly and southerly lines of said lot extended easterly. The parcel of land above described is shown upon the annexed blueprint entitled in part "N.Y.P.& L. CORP. RAQUETTE FALLS LAND CO. PURCHASE, HADLEY DEVELOPMENT E-5606," and contains approximately 7.66 acres of land, as described in a deed between Raquette Falls Land Company and Adirondack Realty Holding, party of the first part's predecessor corporation, and recorded in the Warren County Clerk's Office September 24, 1931 in Book 188 of Deeds at Page 137.

EXCEPTING AND RESERVING that portion that lies within the bounds of the Warrensburg Road (County Route 3).

EXCEPTING AND RESERVING that portion that lies within the bounds of the Delaware and Hudson Railroad Company right of way.

PARCEL III

ALL THAT CERTAIN PIECE OR PARCEL OF LAND situate, lying and being in the Town of Stony Creek, County of Warren and State of New York and being more particularly bounded as follows:

BEGINNING on the west bank of the Hudson River at the mouth of the creek on Lot No. 8 in the River Division of the Dartmouth Patent, and running from thence up said creek to the south line of Lot No 7; thence westerly along the southerly line of Lot No. 7 to the easterly line of Dartmouth Patent (Small Tract); thence southwesterly along the easterly line of Dartmouth Patent (Small Tract) to the northerly line of Lot No. 9; thence easterly along the northerly line of Lot No. 9 to the Hudson River; thence up said river as the same winds and turns to the point or place of beginning, containing 80 acres of land, be the same more or less, being the same premises conveyed by Melvin S. And Evelyn Kenyon to New York Power and Light, party of the first part's predecessor corporation, and recorded in the Warren County Clerk's Office October 3, 1940 in Book 216 of Deeds at Page 297.

EXCEPTING AND RESERVING however, out of the above described Parcel III, the following described four parcels of land, to wit:

FIRST PARCEL

ALL THAT CERTAIN piece or parcel of land conveyed by Dudley M. Kenyon and wife to Earl Eddy by deed dated September 8, 1910, and recorded in the Warren County Clerk's Office on March 4, 1912 in Book 123 of Deeds at Page 161, described as follows:

South line from railroad line to river two hundred forty-five feet; thence up river thirty-four feet; north line two hundred feet to railroad line, thence south along railroad 200 feet to place of beginning, containing one-half acre more or less.

SECOND PARCEL

ALL THAT CERTAIN piece or parcel of land conveyed by Dudley M. Kenyon and wife to Earl E. Eddy by deed dated June 19, 1914 and recorded in the Warren County Clerk's Office on July 22, 1930 in Book 184 of Deeds at Page 21, described as follows:

BEGINNING at the water line between Dudley M. Kenyon and Earl Eddy and runs up said river sixty-two feet; thence running west sixty-nine feet to a corner; being a pipe driven in the ground; thence south to an elm stump sixty-two feet;

thence along the line between said Kenyon and Eddy sixty-two feet six inches to the water line or place of beginning.

THIRD PARCEL

ALL THAT CERTAIN piece or parcel of land conveyed by Dudley M. Kenyon and wife to Earl E. Eddy by deed dated August 15, 1923 and recorded in the Warren County Clerk's Office on June 22, 1930 in Book 184 of Deeds at Page 21 described as follows:

COMMENCING at a stake and stones on the southeast of lands of Dudley M. Kenyon and running thence in a southwesterly direction along the main highway 103 feet to the line of Lot Number Nine; thence in a westerly direction along the line of said Lot Number Nine 220 feet to a butternut tree for a corner; thence in a northerly direction along the foot of the old railroad bank 260 feet to a poplar tree for a corner; and thence in an easterly direction 221 feet to the place of beginning.

FOURTH PARCEL

A strip of land conveyed by Truman D. Cameron and wife to Adirondack Company by deed dated August 27, 1868 and was recorded in the Warren County Clerk's Office on December 16, 1879 in Book 37 of Deeds at Page 148.

The lands hereby conveyed are the same lands conveyed to Melvin S. Kenyon by Ernest B. Cowles by deed dated June 25, 1940 and recorded in the Warren County Clerk's Office on July 10, 1940 in Book 215 of Deeds at Page 323.

TOGETHER with such right, title and interest if any as the parties of the first par may have in and to the lands lying between the northerly boundary of Lot No. 8 River Division of Dartmouth Patent and the creek partly upon said Lot No. 8 and partly northerly thereof.

TOGETHER with all the appurtenances and all the estate, rights and interest of the parties of the first part in and to said premises and the bed, banks, and waters of the Hudson River adjacent to the same.

EXCEPTING AND RESERVING that portion that lies within the bounds of the Delaware and Hudson Railroad Company right of way.

EXCEPTING AND RESERVING that portion that lies within the bounds of the Warrensburg Road (County Route 3).

PARCEL IV

BEGINNING at an iron pipe driven in the ground in the division line between other lands now or formerly of Jason M. Perkins and other lands now or formerly owned by New York Power and Light Corp. at a point where said division line is intersected by the division line between said other lands now or formerly of Jason M. Perkins and said lands of the Delaware and Hudson Railroad and running thence in a southwesterly direction along said division line between said lands now or formerly of Jason M. Perkins and said lands of the Delaware and Hudson Railroad Company two thousand four hundred seventy-five feet (2,475) more or less to a point in the center line of a small brook, which center line is also the division line between said lands now or formerly of Jason M. Perkins and lands now or formerly of Dudley Kenyon; thence along said center line of said brook as it winds and turns and said division line two thousand four hundred ten (2,410) feet more or less to a point opposite an iron pipe driven in the ground on the northerly bank of said brook; thence north nine (9) degrees forty-two (42) minutes east, passing through said iron pipe driven in the ground, one hundred thirteen and one-tenth (113.1) feet to a point; thence north fifty-three (53) degrees forty-six (46) minutes east forty-two and three-tenths (42.3) feet to a point; thence north forty-three (43) degrees fifty (50) minutes east one hundred forty-one and six tenths (141.6) feet to a point; thence north thirty-six (36) degrees twenty (20)

minutes east one hundred twenty-seven and four-tenths (127.4) feet to a point; thence north sixty-six (66) degrees forty (40) minutes east one hundred thirty-two and seven tenths (132.7) feet to a point; thence north sixty-five (65) degrees thirty-two (32) minutes east one hundred sixty-eight and no-tenths (168.0) feet to a point; thence north fifty-nine (59) degrees naught (00) minutes east three hundred twelve and two-tenths (312.2) feet to a point; thence south fifty-three (53) degrees naught five (05) minutes east one hundred eighty-five and four-tenths (185.4) feet to a point; thence north eighty-three (83) degrees fifteen (15) minutes east one hundred seventy-six and seven-tenths (176.7) feet to a point; thence south eighty-five (85) degrees thirty-five (35) minutes east one hundred fifty-two and eight-tenths (152.8) feet to a point; thence north seventeen (17) degrees thirty-five (35) minutes east one hundred fifteen and three-tenths (115.3) feet to a point; thence north seventy-seven (77) degrees seventeen (17) minutes east two hundred one and two tenths (201.2) feet to a point; thence south fifty-six (56) degrees forty-seven (47) minutes east two hundred five and nine tenths (205.9) feet to a point; thence south sixty (60) degrees naught eight (08) minutes west seventy-two and six tenths (72.6) feet to a point; thence south thirty-five (35) degrees forty-one (41) minutes west two hundred fourteen and three tenths (214.3) feet to a point; thence south forty-two (42) degrees naught seven (07) minutes east one hundred forty-four and seven tenths (144.7) feet to a point; thence south forty-seven (47) degrees naught (00) minutes east fifty-nine and eight tenths (59.8) feet to a point; thence north fifty-three degrees fifty-five (55) minutes east sixty and eight-tenths (60.8) feet to a point; thence north one (1) degree thirty-one (31) minutes east forty-five and seven tenths (45.7) feet to a point; thence north fifty (50) degrees forty-one (41) minutes east one hundred and seven tenths (100.7) feet to a point; thence north fifty-seven (57) degrees naught nine (09) minutes east ninety-six and eight tenths (96.8) feet to a point; thence north thirty-two (32) degrees thirty-four (34) minutes east one hundred ninety-eight and seven tenths (198.7) feet to a point; thence north thirty-six (36) degrees naught (00) minutes east one hundred seventy-four and two tenths (174.2) feet to a point; thence north thirty-seven (37) degrees seventeen (17) minutes east eighty-four and five tenths (84.5) feet to a point; thence north thirty-one (31) degrees twenty-nine (29) minutes east one hundred fifty-four and no-tenths (154.0) feet to a point; thence north sixty-two (62) degrees eighteen (18) minutes east sixty-three and four tenths (63.4) feet to a point; thence north forty (40) degrees twenty-six (26) minutes east two hundred twenty and no tenths (220.0) feet to a point; thence north thirty (30) degrees thirty-four (34) minutes west one hundred twenty-two and six-tenths (122.6) feet to a point; thence north twenty-nine (29) degrees twenty-three (23) minutes west sixty-one and nine tenths (61.9) feet to a point; thence north eighty-one (81) degrees thirty-nine (39) minutes west one hundred thirty-four and four tenths (134.4) feet to a point; thence north forty-two (42) degrees forty-eight (48) minutes west one hundred twenty and six-tenths (120.6) feet to a point; thence north eleven (11) degrees twenty-six (26) minutes east one hundred thirty-nine and five tenths (139.5) feet to a point; thence north twenty (20) degrees thirty-eight (38) minutes west one hundred forty and eight-tenths (140.8) feet to a point; thence north sixty-four (64) degrees forty (40) minutes east one hundred four and six-tenths (104.6) feet to a point; thence north fifty-one (51) degrees thirteen (13) minutes east one hundred eighty and three-tenths (180.3) feet to a point; thence north eighty-nine (89) degrees fifty-one (51) minutes east one hundred fifty-four and eight-tenths (154.8) feet to a point; thence south fifteen (15) degrees thirty-seven (37) minutes east one hundred sixty-two (162.3) feet to a point; thence south eighteen (18) degrees twenty-six (26) minutes west one hundred fifty-five and eight tenths (155.8) feet to a point; thence south nineteen (19) degrees naught eight (08) minutes east fifty and five tenths (50.5) feet to a point; thence south sixteen (16) degrees thirty-seven (37) minutes west eighty-eight and five tenths (88.5) feet to a point; thence south thirty-two (32) degrees forty (40) minutes west seventy-eight and nine tenths (78.9) feet to a point; thence south thirty (30) degrees thirty-four (34) minutes east one hundred twenty-two and six tenths (122.6) feet to a point; thence north thirty-eight (38) degrees forty-five (45) minutes east five hundred eighty-four and six tenths (584.6) feet to a point; thence north thirty-four (34) degrees forty-five (45) minutes east three hundred thirty-nine and eight tenths (339.8) feet to a point; thence north nineteen (19) degrees twenty (20) minutes east eighty-seven and four tenths (87.4) feet to a point; thence north seven (7) degrees forty-three (43) minutes west forty and seven tenths (40.7) feet to an iron pipe driven in the ground in the first mentioned division line between said lands now or formerly of Jason M. Perkins and said lands now or formerly of New York Power and Light Corp; thence north eighty-three (83) degrees eleven (11) minutes east along said division line forty (40) feet more or less to the point or place of beginning, containing 12.7 acres be the same more or less, all as shown as parcel 97A on said annexed map, and as described in a deed between Jason M. Perkins and New York Power and Light, party of the first part's predecessor corporation, and recorded in the Warren County Clerk's Office December 9, 1930 in Book 185 of Deeds at Page

269.

BEING part of the same premises described in a deed from Jonathan Perkins to Jason M. Perkins dated August 12, 1930 and recorded in the Warren County Clerk's Office on August 22, 1930 in Book 184 of Deeds at Page 195.

TOGETHER with any right, title or interest of the party of the first part, in and to the strip of land owned and occupied by the Delaware and Hudson Railroad Company, which strip runs from the divisions line between the lands now or formerly of Jason M. Perkins and lands now or formerly of Dudley Kenyon to the division line between said lands of the party of the first part and lands now or formerly owned by New York Power and Light Corp.

EXCEPTING AND RESERVING that portion of land that lies within the bounds of the Warrensburg Road (County Route 3).

THE following exceptions and reservations apply to Parcels 1 through 4 above:

EXCEPTING AND RESERVING to Niagara Mohawk Power Corporation, its successors and assigns, from the parcels described in this deed (WOR should this be referred to as description?), the permanent right of way and easement to operate, maintain, replace and/or remove any and all existing gas and electric facilities, if any, as are now erected upon the premises above described, including the full right, privileges and authority to cut and remove all trees, structures and other obstructions within ten (10) feet of the center line of all electric and gas lines deemed necessary by Niagara Mohawk Power Corporation.

ALSO, EXCEPTING AND RESERVING to Niagara Mohawk Power Corporation, its successors and assigns the permanent right of way and easement to operate, maintain, build, construct, replace and/or remove electric and gas distribution facilities within twenty (20) feet of the edge of any highway (a) abutting the premises herein deemed necessary by said Niagara Mohawk Power Corporation, its successors and assigns, said easement to include the full right, privilege and authority to cut and remove all trees, structures and obstructions within said easement deemed necessary by Niagara Mohawk Power Corporation.

SUBJECT to easements and restrictions of record.

THE lands described are subject to Adirondack Park Agency Permit 91-199 issued January 17, 1992 and filed in the Warren County Clerk's Office in Book 10 of APA Permits at Page 269 on March 6, 1992."

Subject to all covenants, restrictions and easements of record.

Being the same premises conveyed from Niagara Mohawk Power Corporation to John J. Archart and Polly A. Archart by deed dated June 1, 1992 and recorded in the Warren County Clerk's Office in Book 854 of Deeds at page 16.

# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>JOHN J. AREHART,<br><br>Debtor. | Chapter 11<br>Case No. 15-11894 |
| In re<br><br>SIT'N BULL RANCH AND COUNTRY CLUB, INC.,<br><br>Debtor. | Chapter 7<br>Case No. 15-10080 |

**ORDER (I) AUTHORIZING THE SALE OF REAL AND PERSONAL PROPERTY, FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES, TO THE SUCCESSFUL PURCHASER AT THE AUCTION SALE, (II) APPROVING COMPENSATION OF AUCTIONEER, AND (III) GRANTING RELATED RELIEF**

UPON the motion of JOHN J. AREHART, the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 bankruptcy case and MARC S. EHRLIC, the duly-appointed Chapter 7 Trustee in the above-captioned Chapter 7 case of Sit'n Bull Ranch and County Club, Inc. (the "Trustee")(collectively, the "Movants"), for an order (i) authorizing the employment of Tranzon

Auction Properties ("Tranzon"), pursuant to section 327 of Title 11 of the United States Code (the "Bankruptcy Code"), as the auctioneer/real estate broker to sell the property described in the Motion (the "Property") on behalf of their respective estates; (ii) authorizing and scheduling a public auction sale of the Property (the "Auction Sale"), subject to higher and better offers that may be tendered at the Auction Sale, and free and clear of all liens and encumbrances (collectively, "Liens"), with such Liens to attach to the net proceeds of sale; (iii) approving the terms and conditions of sale (including bidding procedures) set forth in the Motion; (iv) scheduling a hearing to consider the approval of the successful bid at the Auction Sale and such other matters as may be brought before the Court (the "Sale Hearing"); (v) authorizing the joint caption set forth above; and (vi) granting related relief; and there having been no objection to the relief requested in therein (collectively, the "Motion") [1];

AND the Court having entered an Order dated October 28, 2015 (the "Procedures Order"), granting the relief requested in the Motion and, among other things, scheduling the Auction Sale for November 18, 2015, approving the Terms and Conditions of the sale (as defined in the Motion) and scheduling a hearing for November 24, 2015 to consider the approval of the sale (the "Sale Hearing"), and the Movants having conducted the Auction Sale as scheduled on November 18, 2015, and the Court having conducted the Sale Hearing on November 24, 2015, and based upon all of the papers filed in connection with the Motion and the Sale Hearing, and based upon the appearances of respective counsel for all appearing parties in interest, and after consideration of all arguments made at the Sale Hearing on the Motion, and upon the entire record of this case; and it appearing that the highest and best offer received by the Movants for the sale of the Property was the offer of Carol O. McLean ("Purchaser"), as set forth in the

[1] Capitalized terms shall have the meanings given them in the Motion, unless otherwise defined herein.

Memorandum of Sale dated November 18, 2015 between Movants and Purchaser, and the Terms and Conditions annexed thereto (collectively, the "Purchase Agreement"), which offer the Movants have proffered for approval in accordance with the Motion, and which offer and its implementation is in the best interests of the debtors' respective estates and creditors; and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED AND DECREED:

1. The Purchase Agreement and the transactions contemplated thereby are hereby approved, and the Movants and Sellers are hereby authorized and empowered and directed to perform their obligations under the Purchase Agreement and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Purchase Agreement, without the necessity of any further order of this Court.

2. The Movants are hereby authorized, empowered and directed, pursuant to §§ 105 and 363(b) and (f) of the Bankruptcy Code, to sell the Property to Purchaser upon delivery of the consideration specified in the Purchase Agreement and completion of all other conditions required at the Closing. The sale of the Property shall vest Purchaser with good and sole legal title to the Property, and, except as may otherwise be provided in the Purchase Agreement, the Property shall be transferred to Purchaser free and clear of any and all Liens. All such Liens on or against the Property shall attach to the consideration to be received by the Movants under the proposed Purchase Agreement.

3. Subject to the terms of the Purchase Agreement, the Movants are authorized to assign to Purchaser any leases and contracts that are incidental to the Property, §§ 363 and 365 of the Bankruptcy Code.

4. All persons or entities having filed mortgages, financing statements or other documents or agreements evidencing Liens on or against the Property are hereby directed to, prior to the Closing, provide to the Movants in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens.

5. If any person or entity described in the preceding paragraph shall not have delivered to Movants termination statements, instruments of satisfaction, or releases of all such Liens, the Movants and Purchaser are hereby authorized, upon Purchaser's payment in full of the purchase price, to execute and file such termination statements, instruments of satisfaction, or releases.

6. This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, recorders of mortgages, and all other persons and entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments.

7. Purchaser is hereby granted and is entitled to the protections provided to a good faith purchaser under § 363(m) of the Bankruptcy Code. The sale approved by this Order is not subject to avoidance pursuant to § 363(n) of the Bankruptcy Code.

8. The fourteen day stay under Bankruptcy Rule 6004(h) is hereby waived.

9. Tranzon's commission as auctioneer in the amount of six (6%) percent of the purchase price, as set forth in the Motion, is approved pursuant to 11 U.S.C. §330, and the Movants are authorized to pay the approved commission to Tranzon upon Closing.

10. 1000 Acres Ranch Resort, Inc. shall be reimbursed from the proceeds of sale at Closing in the amount of $11,214.88, representing the amounts it advanced to Tranzon for costs and expenses in connection with marketing and promoting the Auction Sale.

11. 1000 Acres Ranch Resort, Inc. shall also be reimbursed from the proceeds of sale at Closing in an amount up to $30,000.00 for its actual costs of maintaining the Property, including the feeding and care of horses, during the period November 1, 2015 through the date of Closing.

12. The secured claim of Glens Falls National Bank (the "Bank") in the amount of $809,971.07 shall be paid directly to the Bank from the proceeds of sale at Closing.

13. Except as otherwise set forth in this Order, all proceeds of the sale of the Property shall be held in escrow by Nolan & Heller, LLP until further Order of this Court.

14. This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Purchase Agreement, and to resolve any disputes with respect thereto.

###